The next case called for oral argument is Yow v. Jack Cooper Transport. What is the essence, the core of any court? Put another way, does a court become a mere advisory body if it cannot enforce its own orders? The essence of any court is the power to enforce its own orders. But in this case, defendant says, I can lie. I can lie to you. I can lie to the opposing parties. I can lie under oath. And then I can file a certification of my lie with the circuit court. And there's not a thing you can do about it. I say you can't lie to a court because courts have the power to do something about it. An order is not a request or advice or commentary. It is an order directing someone to do or not to do something specific. In this case, the power to enter that order was Rule 224. There is no question that the underlying order was validly entered. It directed the defendant to identify the parties who had participated in maintenance of the truck in question. They didn't do it. They not only didn't do it, they lied about it. The power to enforce orders is inherent because without power to enforce its order, a court no longer is a court, but it simply is rendering advice. The state court in this case must have jurisdiction or else its orders are meaningless. And I think the most apposite case cited in the briefs is the Texas case, Ingram-Max Bennett. And the defendant says, well, that's not binding. It's a Texas case. Well, no, it's not binding authority. We aren't suggesting it is. But it is one of the few cases that a state court deals with sanctionable conduct that occurs before a cause is removed to federal court. State courts retain jurisdiction to sanction attorneys for pre-removal conduct as long as the sanctions do not affect the merits of the removed case. That's the holding of Ingram-Max Bennett. There's no rational reason to distinguish between sanctions against an attorney and sanctions against the client. And in this case, the client is the one who lied under oath. The order was directed to the Jack Cooper Transport as a company, and Page testified as the corporate representative. His lies are the lies of Jack Cooper Transport. I would note that the removed case did not have any claims by YOW against Jack Cooper Transport. And sanctions, therefore, could not affect the merits of the federal case, especially since that case had terminated. The notice of removal filed by the control company did not include the Rule 224 proceeding. And there were filings that specifically noted that YOW did not have any claim against his employer, Jack Cooper Transport. The federal judge, Judge Herndon, specifically noted that there had been no final judgment in the state court case. So even the federal court did not think that the Rule 224 proceeding was over. Even the defendant, Jack Cooper Transport, didn't think the Rule 224 proceeding was over because they filed two motions to dismiss, both of which were denied. If they thought the case was over, why did they seek formal dismissal? Filing the motions to dismiss recognized the court's power to act and brings the case, even if there is no other jurisdictional source, but brings the case within the court's revestment jurisdiction. It's important to note that there would be no federal jurisdiction over the offending conduct. The Seventh Circuit, which would be controlling the Southern District of Illinois, has specifically said in the Romo and Schoenberg cases that there is no jurisdiction in federal court to sanction pre-removal conduct. It's clear that the deposition took place before the case was removed. And therefore, there would be nothing that the plaintiff could do in the federal litigation to try to obtain sanctions against Jack Cooper Transport. But the defendant in this case urges this court to just give it a pass and let it off by interpreting the circuit court's jurisdiction narrowly. They're saying nobody has the power to punish us. Federal court doesn't have the power to punish us. State court doesn't have the power to punish us. Judge Crowder's order specifically cited the committee comments to Rule 224 and noted that the whole purpose of Rule 224 is for this kind of a case where the plaintiff is employed as an industrial accident and the employer is the sole source of knowledge as to who the potential defendants are. If the employer is permitted to come into court and just lie about potential defendants or that there are no other potential defendants and use its workers' comp immunity as a shield, then the whole purpose of Rule 224 has been eviscerated. Not only renders Rule 224 meaningless, but it makes the entire court system powerless. Because unless we have truthfulness about the identity of parties at a bare minimum, there is nothing that a court can do to render justice in any case. Court has to know who the parties are as a very threshold matter. Courts run on the truth. And to permit lies to prevail over truth subverts the entire court system. That is why a court always has inherent authority to enforce its orders. And enforcement includes both the power to compel compliance with the order, but also power to punish the refusal to obey the court's order. This panel has extensive experience in the state trial courts. Think what would happen if the defendant's position prevailed. If the defendant is allowed to come in on an MR case and lie to the associate circuit judge and say, we're the only ones who did any work on this and you can't sue us because of workers' comp. And then years later, the plaintiff discovers that that's not at all true. The employer had a wholly owned subsidiary that was attempting to shield from liability. The subsidiary put in mismatched parts and caused the injury of the plaintiff. And the defendant's position in this case is tough. Tough. Courts can't do anything about it. And I say to you, that's nonsense. That gets at the very foundation of what courts are. Courts have the power to punish for noncompliance. And Rule 219 gives incredibly broad power to the court to enforce its orders with regard to discovery. Rule 219C authorizes such orders as are just. And then it has a whole litany of other things. And it says included but not limited to all of these other things. There is no broader grant than such orders as are just. And I frequently tell jurors that you have the power to do justice in this case. And I don't think it is hyperbole for me to suggest to this panel that you have the power to do justice in this case by giving some teeth to the circuit court and allowing the circuit court to enforce its order. Judge Crowder termed the defendant's conduct egregious. But she found that Rule 219 did not allow sanctions beyond attorney fees for prosecuting the case. The defendant's lie saved them millions of dollars. They're going to easily cough up $30,000 in attorney fees every time if that's their business. They make rational decisions based on financial considerations. And I get that. So the only language that they understand is going to be dollars. And Rule 219 authorizes that. Rule 219C also authorizes a monetary penalty. But I suggest to you that the court's resources are not limited to Rule 219C's monetary penalty language. It is justice. We can be creative here. What I suggest should be done is remand the case with instructions for the court to determine what damage was caused by the lie, what damage was proximately caused, and what did the plaintiff lose, and enter an award of sanctions equal to that amount with interest going back to the date of the lie. That's the only way to deterrence. It has to cost them. It has to have deterrence. Otherwise, they are always going to come in and lie. And the experience in this case shows that that is the sad, unfortunate truth. So when Judge Mendelson ordered them to tell him who the potential defendants were, and they came in with a certification and said, We have complied, Judge Mendelson. You don't have to do anything more. And asked him to dismiss it. In retrospect, their insistence on attempting to dismiss the case seems highly suspicious. They knew what was going on. They knew exactly what they were doing. They wanted to get out of the court's jurisdiction because they knew that eventually they would get caught. And their argument boils down to, If I tell a lie that is so good the other side doesn't catch on for four or five years, then I am home free. If it's a bad lie and I get caught within 60 days, then you can do something. I submit to you that that is not how the jurisdictional system works. The court always has power to enforce its orders. And a proper resolution of this case, under the just order provision of Rule 219, would include a sanction, a penalty of large proportion. And I would ask that you send it back to the circuit court for entry of such an order. Thank you. Thank you, Counsel. Counsel, before you start, I apologize. We're going to have to take about a five-minute recess and then we'll resume. Thank you, Counsel. I appreciate it. I apologize. We are delighted to hear your argument. May I please report? My name is William Logan. I'm with the Fulman Wiggins Firm in Kansas City. And with me today is Michael Rita from the Heffler Broom Firm in St. Louis, Missouri, and Edwardsville, Illinois. We represent the Appellee and the Cross-Appellant Jack Cooper Transport Company. I want to begin by touching on the point of the circuit court's jurisdiction to consider the underlying motion for sanctions. And our position is that the circuit court did not have jurisdiction to consider that motion. I think the chronology of the violence in this case are critical on the issue of jurisdiction. This case began as a Rule 224 petition that was filed in January of 2004. The Rule 224 order was entered in March of 2004, and Jack Cooper produced a corporate representative for deposition in May of 2004. After the deposition, Jack Cooper filed a motion to dismiss the Rule 224 action, which was referred to by plaintiff's counsel. At the same time, I think they were filed within a day or two of each other, the plaintiffs called what they styled a motion to convert claims. And what the plaintiffs asked the court to do was to convert the Rule 224 action into a civil action. And on May 14th of 2004, the circuit court granted that motion to convert and converted the Rule 224 action into a civil action. So as of May of 2004, May 14th of 2004, we now have a civil action. That's how this case has been described. It's now a civil action, and it proceeded as a civil action. And the plaintiffs brought in on their complaint the co-defendant Cottrell. And Cottrell removed the case to federal court in June of 2004. And our position is that once the case was removed to federal court, the circuit court no longer had jurisdiction of this case, no longer had subject matter jurisdiction. And the plaintiffs referred to the essence of a court and the essence of a court being the ability to enforce its orders. And there's truth to that. But there's also truth to the matter that courts do not always have subject matter jurisdiction to issue orders or enforce orders or enter orders. And when this case was removed to federal court, the circuit court no longer had subject matter jurisdiction. That's consistent with the authorities that say that once a case is removed, the federal court has exclusive jurisdiction. And that once a case is removed, the entire action is removed. And all of the parties and all of their claims are transferred to federal court. And it's only if the case is remanded does the circuit court then recover jurisdiction and have subject matter jurisdiction. This case was never remanded. I think it's a false distinction to try and argue that the Rule 224 action remained in the circuit court and the civil action was removed to federal court. That ignores the fact that the plaintiffs asked to have the Rule 224 action converted into a civil action. That's what the plaintiffs asked the circuit court to do. That's what the circuit court did. And this case proceeded as a civil action. What exactly did the federal court judge do then when he sent it back to the state? It was never sent back. He just dismissed it. It was litigated in federal court. There were two. There was the Hanley's claims and the Yow's claims. Those claims were ultimately severed in federal court. And the Hanley's claims were litigated and the Yow's claims were litigated. And the Yow's claims were litigated to dismissal. And that was in December of 2007. So the case never went back to the circuit court. The case, the Max Bennett case that the plaintiffs rely on to say that a state court can sanction pre-removal conduct, there's a critical element of the Max Bennett case that is not present in this case. And that is that before the Max Bennett case was removed to federal court, the judge had entered an order to show cause and had asked the plaintiff's lawyer to show cause why he should not sanction the plaintiff's lawyer for what the plaintiff's lawyer was trying to do was to avoid the random assignment of cases. The plaintiff's lawyer had filed 16 or 17 cases. When he got the judge that he liked, he decided to proceed in that case and non-suited his previous 16. The judge was kind of aware of this and was alive to this idea of trying to get the judge he liked, the plaintiff's lawyer trying to get the judge he liked. So he entered this order to show cause as to why he should not be sanctioned for trying to avoid that random assignment of cases. So that order to show cause was pending at the time the case was removed. And that's why in that case, the state court proceeded with its order to show cause as to whether or not it should sanction the plaintiff's lawyer. That did not happen in this case. In this case that was removed, there was nothing pending in the circuit court. The plaintiff's counsel says, well, Jack Cooper knew or realized that the case hadn't been dismissed. The Rule 224 action was still pending because it asked for the Rule 224 action to be dismissed. And yes, we did. We asked for our motion to dismiss to be heard. But that motion was filed, and we asked for that motion to be heard before the case was removed. Once the case was removed, Jack Cooper proceeded in the federal action, where all the other parties proceeded as well. The other issue about the Max Bennett case is the state court sanctioned the attorney for his pre-removal conduct and determined that he was able to do that because the sanction did not go to the merits of the case. It was a procedural matter, not to the merits of the case, and they sanctioned the attorney. What the plaintiffs are asking you to do is not to sanction the attorney, but to sanction the party, another distinction between the Max Bennett case. The plaintiffs are asking for a sanction that really goes to the merits of the case because the sanction they're asking you to impose is, under the guise of a monetary penalty, they're asking you to award Mr. Yao the damages he may have been able to recover against auto handling. And that's a sanction that really goes to the merits of Mr. Yao's case. It's a Yao case. What's his case worth? Is auto handling really responsible? Is there causation against auto handling, or is there causation against one of the other parties, Cattrell or C.F. Bender? So the sanction they're asking for goes to the merits. It's not a procedural matter. The other issue the plaintiffs' lawyers make is we've got this inherent authority to enforce orders. The case that addresses that is the Bedea v. Phillips case. And in that case, the court said it had an inherent authority to enforce its order, but it doesn't have an inherent authority to award sanctions. And in the Bedea v. Phillips case, they relied on Rule 219 and held that the court did not have jurisdiction to entertain a motion for sanctions that was filed after the underlying suit had been dismissed. And that there was a distinction between asking the court to enforce an order of discovery, meaning to appear for deposition or to provide documents, and a motion to award sanctions for failure to comply with that. And in Bedea v. Phillips, they said the motion for sanctions has to be pending before the case is dismissed or the court does not have jurisdiction to consider it. The other issue to address is whether or not the circuit court erred when it imposed the sanction against Jack Cooper. The plaintiffs' lawyers have argued, hey, the circuit court did nothing about Jack Cooper's conduct. And we dispute that's wrong. The circuit court did do something about Jack Cooper's conduct. They awarded sanctions to the plaintiffs' lawyer, to the plaintiffs. And the standard of review on a decision to award sanctions is abuse of discretion. And the issue is whether or not the circuit court abused its discretion. Rule 219C authorizes the trial court to impose sanctions on a party who unreasonably fails to comply with the court's discovery rules or orders. And we can see that in Mr. Page's deposition, auto handling was not disclosed. The unusual thing about Mr. Page's deposition is that the plaintiffs chose to proceed by way of a deposition, meaning they were going to pose questions to Mr. Page as the corporate representative to gather the information they felt they needed to proceed with their product liability claim. In the course of Mr. Page's deposition, as the questions were being posed by plaintiffs' counsel, plaintiffs' counsel never asked the who question. They never asked who maintains the trailers. And the question and answer that has given rise to this motion was not posed by the plaintiffs' lawyers. It was posed by Cooper's lawyers who asked Mr. Page about replacement of skids. And Mr. Page used the term, Mr. Page testified, if we replace the skids, we replace them with the same type of skid. He used the term we, and that has given rise to this whole motion for sanctions, that term. And it's ironic that the plaintiffs' lawyer did not ask that question, but Cooper's lawyer did. Cooper's lawyer was trying to get more information about replacement of skids. I thought he said he replaced them with OEM parts. Yeah, that's what he said. And this allegation is, so maybe they only replaced with OEM parts. Who replaced with non-OEM parts? Well, I think by saying what he said, did he not limit his answer? When Mr. Page gave that answer, we replaced with OEM parts. So then it wasn't him that did the replacement. Somebody else did. I think he was using That's what you're saying. No, no, I'm saying that he was using the term we to encompass Jack Cooper. Right. He didn't make the distinction. But he said Jack Cooper, they only replaced with replacement parts. So whoever put the non-replacement part on was not them. Isn't that right there? Isn't that true? Well, I don't know if it could be interpreted that way. Well, who would put non-replacement parts on if he only put replacement parts on? At the time of his deposition, Mr. Page did not realize that in the Wentzville terminal, they were replacing with parts made by CFM. So then he made an answer something he didn't even know. Well, he went back, Your Honor, and provided that errata sheet. Because after his deposition, he learned that the skids on this trailer Weren't OEM. Were not OEM. And he provided his errata sheet to say, hey, we replaced the skids. He said we did it again. Well, he said our maintenance department replaces them. It wasn't their maintenance department. It was somebody else? Well, it's Auto Handling, who is a subsidiary of Jack. That's not we, is it? Our? Is that our? Judge, I think it's a line that he may not have appreciated the distinction at the time, that it's our as opposed to, you know, he said our as opposed to it's a separate wholly owned subsidiary. But, you know, the important thing, I think, is another important thing on this is that When we provided the errata sheet, indicating that these were replacement skids that were manufactured by him, there was no request for a follow-up deposition of Mr. Page. There was no request for identification of We produced the maintenance records that showed the employee numbers of the employees that actually did the replacement. And there was no request for a follow-up deposition. There was no request for any additional discovery on that issue. And Plaintiffs chose that they would proceed on their case on a theory that the replacement of the skids didn't matter, that these different type of skids didn't matter, that their theory was that a manual skid system that was designed and manufactured by the trailer manufacturer was defective. That was their theory. And, you know, if there had been a follow-up deposition of Mr. Page, because, I mean, frankly, in his deposition, he says we replace them with OEM. In his errata sheet, he says they're replacement skids. You know, I was expector that there would be a follow-up deposition. And maybe that's the nature of a deposition. And the nature of discovery is that there are different layers to it, and you've got to kind of keep pushing at it. But we recognize that we made a mistake. I think it's also important to recognize, though, that Judge Crowder did not find that Cooper's conduct was willful. She did not find that Cooper willfully failed to disclose auto handling. Her order of December 6th of 2013 never refers to a willful conduct on the part of Cooper, and that ties in with the reason why she didn't impose a monetary penalty. I think Judge Crowder looked at Rule 219C, looked at the type of sanctions that are available under Rule 219C, and decided that she could not award those sanctions in this case, in particular the monetary penalty, because Cooper's conduct was not willful. And I think that's the reason why she didn't impose it. And as for the other types of sanctions that were being asked for by the plaintiff, those are not available to her under Rule 219C. So our position is that in terms of what sanction Judge Crowder imposed, it was consistent with Rule 219C. And Judge Crowder did not find that the conduct was willful. And again, that's an issue that's in front of Judge Crowder, and it's a question of whether or not she abused her discretion in finding the conduct was not willful. I want to touch on one last point, and that is the references in Judge Crowder's order and in the plaintiff's brief to the Hale case. In Judge Crowder's order, she refers to a sanction being entered against Cooper in the Hale case when there was a substitution of individual defendants for auto handling. The Hale case was initially filed against a number of individual defendant mechanics who worked on Mr. Hale's rig, and then it was discovered those mechanics were employed by auto handling, and auto handling was substituted into the case. What was filed in the Hale case was a motion for substitution of auto handling in place of the individual mechanics. The motion that was filed in the Hale case was not a motion for sanctions. The plaintiffs in Hale asked for substitution, and that's what was granted. Neither Jack Cooper or auto handling objected to that motion for substitution. And that order, which is at page 62 of the supplemental record, refers simply to substitution and not to a sanction. And it refers to a mistake being made, and because of the mistake being made, the auto handling was not in the case from the beginning. So any reliance on the Hale case as evidence of intentional or other type of conduct on the part of Jack Cooper that's sanctionable is incorrect. It was simply a motion for substitution that was not opposed and was ultimately granted. And with that, unless there are any other questions. I believe so. Thank you. All right. Thank you. Counsel? Judge Crowder's order did not use the term willful. It used the term egregious. And the reason that de novo review is required in this case is because she said no matter how egregious Jack Cooper Transportation's conduct was, she had no legal authority to impose additional sanctions. That's why it's de novo review. It's a question of law and a question of the interpretation of Rule 219. That gives this court power for de novo review because it is a question of law. Justice Welch, in Page's testimony, he specifically said if we replace the skids on any of our equipment, we replace them with original skids. That's bad enough. But then he files an errata sheet on June 29 of 2004, after the case is removed, by the way, and then says that I am aware that sometimes in the Wentzville Terminal, our maintenance department replaces damaged patrol skids with skids from other manufacturers. How are we supposed to get we have a wholly owned subsidiary named Auto Handling out of that? If he had actually said that, we have a wholly owned subsidiary named Auto Handling in Wentzville that also does maintenance on our trucks and may have done maintenance on this one. Okay, now we're on notice and we can sue Auto Handling. One of the reasons they did that is Auto Handling and the plaintiff were both Missouri residents. It would have defeated removal if they disclosed the identity of Auto Handling. That's a crucial fact. And it also goes to their state of mind. Badea, which he mentioned, relies on a reversed case, Inmate MM, and we discuss the cases in our brief subsequently that say that Badea has no analytical soundness at this time. With regard to the issue of the removal, Cutrell stated that the YOWs had no claims against Jack Cooper. That's in the record at C-486 and C-491. But it also shows that they were trying, that Jack Cooper Transportation had asked the federal court for dismissal because they weren't part of the civil action. YOWs had no claim against Jack Cooper, who was the employer. So therefore, they got dismissed and they asked for a severance, which was granted, and then got dismissed from the case because of that. So it shows that the 224 petition was still pending, was still alive. Judge Herndon's orders said there was no final judgment in the state court case. That ruling was procured by Jack Cooper. They were trying to benefit from saying that the state court case didn't, was still alive, had never been over, it was not part of the federal case. They also filed their motion to dismiss after the removal. If that was part of the removal case, then there would be no reason to file a motion to dismiss in the state court at that point. They knew that it wasn't part of the federal proceeding. Lying to the court, filing multiple lies, not just the lying in the deposition, but then following it up with a certification that they had complied when they had not, followed up by an errata sheet where they're, I guess, kind of half-heartedly trying to put us on notice and maybe other manufacturers may be involved, but they never disclosed their wholly owned subsidiary, shows the willfulness of this company in trying to hide the identity of their subsidiary. It couldn't be clearer, and Judge Crowder, although she didn't specifically say willful, her statement that no matter how egregious conduct certainly shows that she made a finding that sanctions would be appropriate if they were allowed by law. But her interpretation of the rule was that they could not be awarded. I'm asking you to interpret the rule to award sanctions because that is the only way to give meaning and teeth to this system of disco. If there are no other questions, I'm through. I don't believe there are. Thank you, counsel. We appreciate the briefs and arguments. Counsel will take this case under advisement, quote, in a very short recess.